**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JESSIE VIVIAN DEPRONIO,

                                        Plaintiff,

            v.                                                  No. 7:15-CV-231
                                                                     (GLS/CFH)
CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                                        Defendant.
_____

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**APPEARANCES:**                               **OF COUNSEL:**

Law Offices of Kenneth Hiller          KENNETH HILLER, ESQ.
Attorneys for Plaintiff
6000 N. Bailey Ave., Suite 1A
Amherst, New York 14226

Social Security Administration,          JASON P. PECK, ESQ.
Office of General Counsel                Special Assistant U.S. Attorney
Attorneys for Defendant
26 Federal Plaza - Room 3904
New York, New York 10278

### REPORT-RECOMMENDATION AND ORDER[1]

       Plaintiff Jessie Vivian Depronio ("Depronio") brings this action pursuant to 42 U.S.C.

§ 405(g) seeking review of a decision by the Commissioner of Social Security

("Commissioner") denying her application for supplemental security income ("SSI") under

the Social Security Act ("Act").  Depronio moves for a judgment on the pleadings, or in the

_____

       [1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C.
§ 636(b) and N.D.N.Y.L.R. 72.3(c).

alternative, for the matter to be remanded for further administrative proceedings. Dkt. No. 9. The Commissioner cross-moves for a judgment on the pleadings. Dkt. No. 10. For the following reasons, it is recommended that the decision of the Commissioner be affirmed.

## 1. Background

### A. Procedural History

Depronio, born on October 10, 1971, applied for SSI on October 27, 2010. T. 167-73.[2] Her alleged onset date was January 1, 2005.[3] Id. at 167. The application was denied on February 3, 2011. Id. at 98-105. Depronio requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on February 6, 2012. Id. at 106-08; 35-63 (administrative hearing transcript). In a decision dated September 27, 2013, ALJ Nancy G. Pasiecznik held that Depronio was not entitled to disability benefits. Id. at 8-34. Depronio filed a timely request for review, and on December 29, 2014, the Appeals Council denied Depronio's request, making the ALJ's findings the final decision of the Commissioner. Id. at 1-3. This action followed.

### B. Facts

Depronio alleged that she is disabled due to migraine headaches; asthma; a herniated disc in her back; depression; bipolar disorder; and attention deficit disorder. T. 203. She completed the tenth grade and later earned her GED. Id. at 38-39. She held a

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. See Dkt. No. 8.

[3] Depronio, through her counsel, later amended the alleged onset date to May 14, 2010. T. 40.

job as an assembly line worker from October 1999 through December 1999.  Id. at 204.


## II.  Discussion

### A.  Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  If the Commissioner's finding is supported by substantial evidence, it is conclusive.  42 USC § 405(g) (2006); Halloran, 362 F.3d at 31.


### B.  Determination of Disability

"Every individual who is under a disability shall be entitled to a disability. . . benefit. . .

." 42 U.S.C. § 423(a)(1) (2004).  Disability is defined as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for a continuous period of not

less than 12 months."  Id. § 423(d)(1)(A).  A medically determinable impairment is an

affliction that is so severe that it renders an individual unable to continue with his or her

previous work or any other employment that may be available to him or her based upon age,

education, and work experience.   Id. § 423(d)(2)(A).  Such an impairment must be

supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. §

423(d)(3).  Additionally, the severity of the impairment is "based [upon] objective medical

facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain

or disability, and educational background, age, and work experience."  Ventura v. Barnhart,

No. 04-CV-9018(NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v.

Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based upon 20 C.F.R. § 404.1520,

to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If he [or she] is
> not, the [Commissioner] next considers whether the claimant has
> a 'severe impairment' which significantly limits his [or her]
> physical or mental ability to do basic work activities.  If the
> claimant suffers such an impairment, the third inquiry is whether,
> based solely on medical evidence, the claimant has an
> impairment which is listed in Appendix 1 of the regulations.  If the
> claimant has such an impairment, the [Commissioner] will
> consider him [or her] disabled without considering vocational
> factors such as age, education, and work experience; the
> [Commissioner] presumes that a claimant who is afflicted with a
> 'listed' impairment is unable to perform substantial gainful
> activity.  Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's

> severe impairment, he [or she] has the residual functional
> capacity to perform his [or her] past work. Finally, if the claimant
> is unable to perform his [or her] past work, the [Commissioner]
> then determines whether there is other work which the claimant
> could perform.

Berry, 675 F.2d at 467. The plaintiff bears the initial burden of proof to establish each of the

first four steps. DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry,

675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the

Commissioner to prove that the plaintiff is still able to engage in gainful employment

somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).


### C. ALJ Pasiecznik's Findings

Depronio, represented by counsel, testified at the hearing held on February 6, 2012.

T. 35-63 (administrative hearing transcript). Using the five-step sequential evaluation, the

ALJ found that Depronio (1) had not engaged in substantial gainful activity since September

20, 2010, the application protective filing date; (2) had the following severe medically

determinable impairments: degenerative disc disease of the lumbar spine with a left-sided

disc herniation at L4-5, lumbar facet arthropathy, disc displacement, and radiculopathy by

history; a borderline personality disorder with depressive and self-defeating personality

traits; a negativistic (passive-aggressive) personality disorder; a somatization disorder; a

language based processing deficit learning disability by history; a depressive disorder, not

otherwise specified ("NOS"); and Attention Deficit Hyperactivity Disorder ("ADHD") by

history; (3) did not have an impairment, alone or in combination, sufficient to meet the listed

impairments in Appendix 1, Subpart P of Social Security Regulation Part 404; (4) maintained

the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 416.967(b), with additional nonexertional limitations. Specifically, she can sit for about six hours in an eight-hour workday, with normal breaks; stand for about six hours in an eight-hour workday, with normal breaks, and walk for about six hours in an eight-hour workday, with normal breaks. She can lift, carry, push, and pull 20 pounds occasionally and ten pounds frequently. She can frequently climb, kneel, stoop, crouch, and crawl. The claimant has no limitation in reaching, feeling, handling, fingering, or using arm or foot controls. She can: understand, remember, and carry out simple instructions; respond appropriately to supervision, co-workers, and usual work situations, and deal with changes in a routine work setting. She is limited to performing simple work tasks that do not involve frequent communication with the general public.

and thus, (5) given her age, education, work experience, and RFC, was capable of engaging in employment which exists in significant numbers in the national economy. Id. at 11-28 (footnote omitted). Therefore, the ALJ determined that Depronio was not disabled.

### D. Depronio's Contentions

Depronio contends that the ALJ: (1) failed to account for Depronio's learning disability in the RFC assessment; (2) mischaracterized evidence and selectively read the record; (3) improperly assessed Depronio's credibility; (4) erred in assigning "only some weight" to the opinion of Maraiel Faraco, LMSW; and (5) improperly applied the Medical-Vocational Grid rules at step five of the sequential evaluation. Dkt. No. 9-1 at 15-25. Depronio contends that the ALJ's alleged errors resulted in a finding not supported by substantial evidence. Id.

### 1. RFC

The ALJ determined that Depronio retained the RFC:

to perform light work as defined in 20 CFR § 416.967(b), with additional nonexertional limitations. Specifically, she can sit for about six hours in an eight-hour workday, with normal breaks; stand for about six hours in an eight-hour workday, with normal breaks, and walk for about six hours in an eight-hour workday, with normal breaks. She can lift, carry, push, and pull 20 pounds occasionally and ten pounds frequently. She can frequently climb, kneel, stoop, crouch, and crawl. The claimant has no limitation in reaching, feeling, handling, fingering, or using arm or foot controls. She can: understand, remember, and carry out simple instructions; respond appropriately to supervision, co-workers, and usual work situations, and deal with changes in a routine work setting. She is limited to performing simple work tasks that do not involve frequent communication with the general public.

T. 20-21. In reaching this assessment, the ALJ discussed the notes and opinions of Dr. Sandra Jensen, Ph.D.; Dr. Daniel Mangold, M.D., a State Agency reviewing psychiatrist; Dr. Donna Miller, D.O., who performed a consultative medical examination of Depronio at the request of the Social Security Administration; and Maraiel Faraco, LMSW. Id. at 20-26.

RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms. Martone v. Apfel, 70 F. Supp. 2d 145,150 (N.D.N.Y. 1999); 20 C.F.R. §§ 404.1545, 416.945. "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient." Martone, 70 F. Supp. 2d at 150. RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy. New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960 (2003). The Second Circuit has clarified that, in step five of the Commissioner's analysis, once RFC has been determined "the Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional

evidence of the claimant's [RFC]." <u>Poupore v. Astrue</u>, 566 F.3d 303, 306 (2d Cir. 2009).

### i. Depronio's Learning Disability

The ALJ found that Depronio had the severe impairment of "a language based processing deficit learning disability by history." T. 16. Depronio contends that the ALJ did not properly account for the mental work-related limitations caused by her learning disability in the ALJ's RFC assessment. Dkt. No. 9-1 at 15-19.

The ALJ stated that, although Depronio reported trouble reading and remembering concepts in school, and despite testing that revealed low to borderline intelligence, she took regular classes in school and eventually obtained her GED. T. 23. The ALJ's RFC Assessment limits Depronio to "performing simple work tasks that do not involve frequent communication with the general public." <u>Id.</u> at 21.

Dr. Ralph Johns, Psy.D., performed a psychological evaluation of Depronio (née Beckstead) on October 8, 2008. T. 388-92. The evaluation was meant to "screen for factors which might be contributing to her apparent difficulty processing information during therapy sessions." <u>Id.</u> at 388. Depronio reported to Dr. Johns that she was "not processing speech well," and that she was having increasing difficulty understanding her children as they aged and started using more complex language. <u>Id.</u> Depronio further reported that she isolates herself, and feels like she is "in another world." <u>Id.</u> at 389. She reported that she is irresponsible with her finances, engages in "indiscriminate sexual pursuit," and experiences "periods of distractibility, hyperactivity, and overtalkativeness." <u>Id.</u>

Depronio left school in the tenth grade after becoming pregnant. T. 390. She later obtained her GED. <u>Id.</u> at 38-39. On the WAIS-III test, "a well standardized measure of

intellectual functioning," Depronio had a Verbal IQ score of 74, a Performance IQ score of 99, and a Full Scale IQ score of 84.  Id. at 390.  Dr. Johns described the twenty-five point difference between her Verbal IQ and Performance IQ scores as "statistically significant and unusual in magnitude," indicating "that she has much better facility expressing her intelligence non-verbally emphasizing visual-motor problem solving skills."  Id.  Dr. Johns further stated that Depronio had no issues with "processing speed," rather, "[t]he deficit is in the areas of verbal acquired knowledge and verbal reasoning."  Id.

On a WRAT3 test, Depronio scored 81 in Reading, 95 in Spelling, and 93 in Arithmetic.  T. 390.  "The Reading score is in the low average range, and the Spelling and Arithmetic scores are in the average classification."  Id.  On the Woodcock-Johnson Reading Achievement Test, Depronio scored a 71, which placed her in the "borderline range."  Id. at 390-91.

Dr. Johns concluded that Depronio suffered from "a language-based processing deficit that is significant enough to be considered a learning disability."  T. 391.  He stated that this learning disability affects her reading ability.  Id.  As a result of Depronio's learning disability, Dr. Johns opined that much of the content of her therapy sessions "is probably lost."  Id.  He suggested that Depronio's sessions be slowed down, and that she take simple notes during the sessions.  Id.

On December 9, 2010, Dr. Sandra Jensen, Ph.D. performed a psychiatric evaluation of Depronio.  T. 487-91.  Dr. Jensen noted that Depronio "was in regular education when she was in school."  Id. at 487.  Depronio reported that she suffers from concentration difficulties and short term memory deficits.  Id. at 488.

Upon testing, Dr. Jensen noted that Depronio "was able to do one and two-step

calculations and serial 3s subtractions from 20." T. 489. Depronio's recent and remote memory skills "appeared to be intact." Id. However, Dr. Jensen noted that "[Depronio's] intellectual functioning was estimated to be in the below average range. General fund of information is somewhat limited." Id. Dr. Jensen's Medical Source Statement ("MSS") stated that "[Depronio] can follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, [and] make appropriate decisions all within normal limits." Id. at 490. Dr. Jensen opined that Depronio's prognosis was "[g]ood give[n her] current level of functioning." Id. at 491.

D. Mangold, a non-examining State Agency reviewing psychiatrist, completed a Psychiatric Review Technique and Mental RFC Assessment using Depronio's records on January 21, 2011. T. 492-509. Mangold found that Depronio was no more than moderately limited in mental activities pertaining to: understanding and memory; sustained concentration and persistence; social interaction; and adaptation. Id. at 506-07. Mangold opined that Depronio "can understand, remember, and carry out simple instructions. [She] responds appropriately to supervision, coworkers and work situations. [She] uses appropriate judgment to make simple work related decisions and deal with changes in a routine work-setting." Id. at 504. Mangold further found that Depronio retained the ability to "sustain attention and concentration for a meaningful period relative to the workday," and "retain[ed] the mental ability to perform simple competitive work in a low contact work setting." Id.

Depronio specifically argues that the ALJ failed to include limitations indicated by Dr. Johns' report. Dkt. No. 9-1 at 17. According to Depronio, these limitations would include "a

slower pace, checks for understanding, and notes." Id.

The Court finds that the ALJ added nonexertional limitations to the RFC assessment that accurately reflect any limitations Depronio may experience due to her learning disability and that those limitations are supported by substantial evidence. The ALJ limited Depronio to unskilled work. T. 27. "These jobs ordinarily involve dealing primarily with objects, rather than with data or people. . . ." Social Security Ruling ("SSR") 85-15, Titles II and XVI: Capability to Do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, 1985 WL 56857, at *4 (S.S.A. 1985).

Next, the Court notes that Dr. Johns' evaluation of Depronio was not an assessment of how her mental impairments limit her ability to perform work-related functions. The ALJ limited Depronio to "performing simple work tasks that do not involve frequent communication with the general public." T. 21. Dr. Johns opined that Depronio had no issues with "processing speed." Id. at 390. Instead, her "deficit [was] in the areas of verbal acquired knowledge and verbal reasoning." Id. Dr. Johns further opined that Depronio had only a "minor deficiency" in working memory. Id. He explained that the working memory test "require[s] the examinee to attend to information, to hold briefly and process that information in memory, and then to formulate a response." Id. More than two years after Dr. Johns' assessment, Dr. Jensen evaluated Depronio and found that, despite her "below average" intellectual functioning and "limited" general fund of information, Depronio retained the ability to "follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform tasks independently, [and] make appropriate decisions all within normal limits." Id. at 489-90. Mangold opined that Depronio "retain[s] the mental ability to perform

simple competitive work in a low contact work setting." Id. at 504. The ALJ is required to

"consider all evidence" in a claimant's record. 20 C.F.R. § 404.1520(a)(3). Here, the ALJ

considered Dr. Johns' 2008 examination in addition to Dr. Jensen's and Mangold's

examinations in regards to Depronio's learning disability. T. 23. The ALJ also noted that

Depronio's Global Assessment of Function ("GAF") score improved to 60, up from 50, after

starting medication.[4] Id.

The Court finds that the ALJ did not commit error in assessing Depronio's RFC and

any limitations imposed by her learning disability. See Melia v. Colvin, No. 1:14-cv-00226

(MAD/TWD), 2015 WL 4041742, at *13 (N.D.N.Y. July 1, 2015) (finding no error in the ALJ's

assessment of the plaintiff's limitations imposed by the plaintiff's learning disability where the

ALJ limited the plaintiff to "simple, routine tasks" and cited the opinions of consultative

examiners as substantial evidence). The ALJ properly considered the evidence in the

records and did not err in finding that Dr. Jensen's and Mangold's opinions were more

probative as to Depronio's limitations. See Mongeur, 722 F.2d at 1039 (holding that the

report of a consultative physician may constitute substantial evidence).

Depronio further argues that Dr. Jensen's opinion cannot constitute substantial

evidence because it is not clear whether she had reviewed Dr. Johns' evaluation. Dkt. No.

9-1 at 17 n.4. This contention is misplaced. See Mongeur, 722 F.2d at 1039. It is the ALJ's

duty to determine the weight to give to the opinion of a psychological consultant, and the

---

[4] The GAF is a scale set forth by the American Psychiatric Association to assist "in tracking the clinical progress of individuals [with mental health problems] in global terms." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (American Psychiatric Association, 4th Ed. Text Revision 2000) ("DSM-IV-TR"). A GAF of between 51 and 60 indicates moderate symptoms (i.e. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (i.e. few friends, conflicts with peers or co-workers). Id. at 34.

ALJ may compare the psychological consultant's report with other evidence in the record. S.S.R. 96-6P, Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence, 1996 WL 374180, at *2 (S.S.A. July 2, 1996). As such, the ALJ reviews a psychological consultant's opinion considering various factors such as "the consistency of the opinion with the record as a whole, including other medical opinions. . . ." Id. The Court finds that here, the ALJ properly considered Dr. Jensen's opinion.

Accordingly, the ALJ's determination of Depronio's nonexertional impairments caused by her learning disability is supported by substantial evidence, and it is recommended that Depronio's request to remand on this issue be denied.

### ii. Opinion of Maraiel Faraco, LMSW

Depronio contends that the ALJ erred in rejecting the opinion of Maraiel Faraco, LMSW. Dkt. No. 9-1 at 19. The Commissioner argues that the ALJ properly considered Faraco's opinion as an "other source" opinion. Dkt. No. 10 at 12-13. Part and parcel to Depronio's contention that the ALJ erred in rejecting Faraco's opinion is her argument that the ALJ selectively read and mischaracterized Faraco's treatment records, along with records from Depronio's treatment at Spectrum Health, which includes treatment notes from both Faraco and another social worker, Maria Langa.[5] Dkt. No. 9-1 at 19-21. The

---

[5] Depronio's medical record from Spectrum Health also includes treatment notes from Jerry Frisicaro, a psychiatric nurse practitioner. T. 629-46. However, NP Frisicaro's notes are handwritten and largely illegible. See id.

Commissioner contends that the ALJ accurately read and characterized Faraco's treatment notes.  Dkt. No. 10 at 13.

Depronio was first seen by Marcia Langa at Spectrum Health on April 15, 2010.  T. 575.  Depronio rated her depression as a seven or eight out of ten, and reported feelings of irritability, lack of motivation, sleeping all day, and a decreased appetite.  Id.  On April 22, 2010, Depronio reported that she was "feeling better."  Id.  On May 6, 2010, she expressed having difficulty managing her stress after discovering that her husband was addicted to crack cocaine.  Id. at 576.  On May 25, 2010, Depronio reported that she no longer feels depressed.  Id. at 577.  She continued to deny depression or mood instability on June 3, 2010, and June 10, 2010, and Langa rated her presentation/status as "stable."  Id. at 578.

In July and August, 2010, Depronio reported stress related to problems with her husband, and her struggles in deciding whether or not to move back to Ogdensburg, New York from Buffalo, New York in order to be closer to her children.  T. 579-80.  On October 1, 2010, she reported that she was feeling better, and rated her depression as a five out of ten.  Id. at 582.  She also reported that she was sleeping better, and experiencing improved concentration and decreased irritability.  Id.  Langa noted that Depronio's condition was "improving."  Id.  Depronio's status was listed as "improving" at her next two appointments with Langa on October 27, 2010, and December 21, 2010.  Id. at 582-84.

Depronio was seen by Langa again on January 19, 2011.  T. 585.  At that time, she reported that she had stayed at Haven House in Buffalo[6] with her son for a short time during

---

[6] Haven House works "to prevent domestic violence/intimate partner violence and promote peace in the home.  Services are based on a continuum of care ranging from a fully-inclusive emergency shelter in a confidential location to long-term transitional housing."  CHILD AND FAMILY SERVICES, HAVEN HOUSE, http://www.cfsbny.org/programs/haven-house/ (last visited Mar. 18, 2016).

the preceding weeks after arguing with her husband.  Id.  She reported that she was feeling better, and that she had formed some friendships at Haven House and enjoyed taking a parenting class there.  Id.

On February 3, 2011, Depronio reported a decrease in depressive symptoms, but increased sleep and decreased concentration since she stopped taking Concerta.  T. 585-86.  On March 3, 2011, Depronio reported that she "still feels jittery with difficulty focusing." Id. at 586.  She expressed a desire to be able to focus better because she "would like to work."  Id.  She denied depression.  Id.  On March 17, 2011, Depronio reported that "everything is great," denied depression, but reported that "she still struggles with ADHD" and feeling tired after taking medication, and in the mornings.  Id. at 587.  She reported decreased depression, but problems with ADHD on March 31, 2011.  Id. at 588.  Depronio reported problems with ADHD, including difficulty concentrating, on April 14, 2011, but also reported decreased depression and improved sleep.  Id. at 588-89.

On May 5, 2011, Depronio reported "increased confidence" and that she was enjoying social interactions with her neighbors.  T. 589.  On June 29, 2011, she reported to Langa that she was experiencing stress caused by a strained relationship with her eighteen-year-old daughter.  Id. at 591.

Depronio spent a portion of the summer of 2011 in St. Lawrence County, New York, visiting her children.  T. 592.  She returned to Langa on August 14, 2011.  Id.  She denied feeling depressed and said that she had no trouble sleeping.  Id.  She saw Langa again on September 29, 2011 and October 13, 2011 but reported no significant changes.  Id. at 593-94.

On October 27, 2011, Depronio reported that she felt "good" and denied depression.

T. 594.  However, she also reported difficulty structuring her day, and claimed that she felt that she was still unable to work or participate in a job training program.  Id.  On November 10, 2011, she reported that she was not doing well because she felt tired all the time.  Id. at 595.  Her medications made her feel tired after dinner.  Id.  She reported the same symptoms on December 8, 2011, and denied depression.  Id. at 595-96.  On January 5, 2012, she reported that she was doing well "overall."  Id.  She also reported that she was sleeping better on Ambien, but still had trouble structuring her day.  Id. at 596-97.  On May 23, 2012, Depronio reported that she was feeling better on her current medications, and experienced decreased anxiety and depression.  Id. at 725.  She also stated that she had a part-time job at her church that she enjoyed.  Id.

Depronio's first treatment note from Faraco is dated June 6, 2012.  T. 727.  Depronio reported that she suffers from anxiety due to her family situation.  Id.  She stated that she finds comfort in attending her church, going outside, playing with her animals, cleaning, walking, knitting, and doing puzzles.  Id.  She also attended parenting class once per month.  Id.  On June 21, 2012, Depronio reported that she had an "episode" with her husband the previous week.  Id. at 729.  She worked with Faraco to identify the trigger of her angry outburst and they discussed coping mechanisms.  Id.

Depronio reported on June 27, 2012 that "she is having a hard time sleeping."  T. 660.  She also reported that "her moods are lower," and that she was experiencing a lack of energy and motivation due to her medications.  Id.  She also stated that she enjoys going to the park and getting ice cream with her husband.  Id.  Faraco noted that Depronio "denied any lethality concerns."  Id.  On July 11, 2012, she reported that she was having a difficult time communicating with her husband, and denied any lethality concerns.  Id. at 661.

On July 25, 2012, Depronio reported "that things are going well" and she was adjusting to a medication change favorably. T. 662. Faraco noted that Depronio was looking forward to trips to Darien Lake and the Erie County Fair. Id. Faraco and Depronio discussed healthy coping techniques for when Depronio becomes irritable or stressed. Id.

On September 10, 2012, Depronio reported to Faraco that she was "doing well," and felt that she was handling her symptoms well. T. 678. She joined a parenting group. Id. She also denied any lethality concerns. Id. On September 24, 2012, Depronio reported that she was doing well but struggled because she was not living close to her children. Id. at 678-79. She further reported continued struggle with social anxiety and being around people. Id. at 679. She also reported that she was planning a trip to Florida. Id. She denied any lethality concerns and reported that her medication was working well despite some side effects. Id.

On October 2, 2012, Depronio reported that she had been feeling negative lately. T. 680. Faraco discussed symptom management skills with her. Id. Depronio was upset about her husband on October 16, 2012, but Faraco described her as "future oriented" and she denied any lethality concerns. Id. at 680-81.

On October 29, 2012, Depronio expressed concerns regarding panic attacks, anxiety, and her future plans to travel to Florida. T. 690. However, she also stated that she was able to manage her mental health symptoms using her medication and coping skills. Id. On November 19, 2012, Depronio reported to Faraco that she had a lot of fun on her trip to Florida. Id. at 691. On December 10, 2012, Depronio reported that she was feeling very anxious. Id. at 692. On December 17, 2012, Depronio stated that she had experienced a range of emotions the prior week, feeling sad, angry, and overwhelmed. Id. at 692-93. She

also stated that she found comfort in attending church services.  Id. at 693.  On December 31, 2012, she reported that she would be celebrating New Year's Eve at her church.  Id. at 701.

On January 14, 2013, Depronio reported that she was feeling stressed because her daughter had encountered some difficulties.  T. 701-02.  She reported an increase in her depressive symptoms on January 21, 2013.  Id. at 702-03.  She further reported that she lacked any motivation.  Id. at 703.  On January 28, 2013, Depronio reported some difficulties in discovering that her husband had been unfaithful to her.  Id. at 703-04.  However, she also reported that attending church, reaching out to her supports, and listening to music helped her.  Id. at 704.

Faraco completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) for Depronio on February 4, 2013.  T. 651-56.  Faraco opined that Depronio had moderate restrictions in her ability to understand, remember, and carry out simple instructions.  Id. at 652.  She further opined that Depronio had marked restrictions in her ability to make judgments on simple work-related decisions; and understand, remember, and carry out complex instructions.  Id.  Faraco further noted that Depronio had extreme restriction in her ability to make judgments on complex work-related decisions.  Id.

Faraco opined that Depronio would have no restriction in her ability to interact with the public.  T. 653.  She opined that Depronio would have mild restriction in interacting with co-workers, and moderate restriction in interacting with supervisors.  Id.  Depronio would have marked restriction in her ability to respond appropriately to usual work situations and to changes in a routine work setting.  Id.  Where Faraco was asked to identify the factors that support her assessment, she noted: "Jessie reports high levels of anxiety and depressive

symptoms.  She reports very poor focus and concentration skills."  Id.

The ALJ declined to give controlling weight to Faraco's opinion.  T. 25.  Depronio argues that the ALJ erred in "rejecti[ng]" Faraco's opinion.  Dkt. No. 9-1 at 19.

Faraco is a clinical social worker.  Clinical social workers are not considered acceptable medical sources under the social security regulations.  See 20 C.F.R. § 416.913; Conlin ex rel. N.T.C.B. v. Colvin, 111 F. Supp. 3d 376, 386 (W.D.N.Y. 2015); Roat v. Barnhart, 717 F. Supp. 2d 241, 264 n.8 (N.D.N.Y. 2010).  As such, the ALJ may conclude that the opinion of a social worker is not entitled to any weight, however, the ALJ must give his or her reasons for that decision.  Saxon v. Astrue, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011).  The ALJ must evaluate the social worker's opinion using the same factors that are used to evaluate treating source opinions, as set forth in the regulations.  Id.; 20 C.F.R. 404.1527(d).  Those factors include the examining and treatment relationship between the claimant and the source; the degree to which the source supports his or her opinion with clinical or diagnostic findings; and the consistency of the opinion with the record as a whole. S.S.R. 06-03P, Titles II and XVI:II and XVI: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, 2006 WL 2329939, at *3 (S.S.A. Aug. 9, 2006).

Here, the ALJ determined that Faraco's opinion was not consistent with Depronio's medical records, which showed that she repeatedly denied symptoms of depression and anxiety.  T. 26.  The ALJ further reported that Faraco's limitations were not supported by Depronio's reported activities of daily living.  Id.

As shown in the records described above, Depronio frequently denied symptoms of

depression.  See T. 577-79, 585-87, 589, 592, 594, 596.  When she was seen at Lifetime

Health for problems with dry and itchy skin on December 14, 2010, her treatment record

stated that she was "[n]egative for psychiatric symptoms."  Id. at 531.  She was again listed

as "[n]egative for psychiatric symptoms" upon examination at Lifetime Health on June 9,

2011.  Id. at 559.  Depronio denied "mood change, depression, anxiety, [or] psychiatric

problems" while receiving treatment for migraine headaches on November 17, 2010.  Id.  at

565-66.  Conversely, Depronio complained of symptoms of depression on multiple

occasions.  See T. 575, 586, 660, 679-80, 692-93, 701-03, 727.  Depronio argues that the

ALJ's omission of any reference to medical records where Depronio reports depressive

symptoms is error.  Dkt. No. 9-1 at 19-21.  However, it is the ALJ's duty to weight conflicting

medical evidence, including situations where the claimant's reported symptoms conflict with

other evidence in the record.  Richardson, 402 U.S. at 399.  Here, the ALJ found that

Faraco's opinion conflicted with the various treatment notes in the record from Spectrum

Health, and Depronio's reported activities of daily living.  T. 26.  As such, the Court finds that

the ALJ did not err in assigning only some weight to Faraco's opinion.  See Piatt v. Colvin,

80 F. Supp. 3d 480, 493 (W.D.N.Y. 2015) (finding that the ALJ did not err in assigning little

weight to a social worker's opinion where the opinion conflicted with treatment records and

the plaintiff's reported activities of daily living).

　　　　The Court also finds that Depronio's argument that the ALJ "cherry picked" the record

in assessing Faraco's opinion is without merit.  As described above, there were multiple

medical records spanning a nearly two-year period where Depronio reported improvements

in her symptoms, and denied depression.  While there were also medical records within that

same period where Depronio reported depressive symptoms, "[a]n ALJ is not required to

explicitly analyze every piece of conflicting evidence in the record." <u>Murphy v. Comm'r of Soc. Sec.</u>, No. 3:13-CV-0960 (GTS/ATB), 2015 WL 64440, at *3 (N.D.N.Y. Jan. 5, 2015) (citing <u>Mongeur</u>, 722 F.2d at 1040) (additional citation omitted).  Here, while the ALJ did not perform an exhaustive analysis of every symptom reported by Depronio, the ALJ did discuss some of Depronio's depressive symptoms.  The ALJ noted that Depronio reported that she does not like being around people or leaving the house.  T. 22.  The ALJ also noted that Depronio was upset because she lived far from her children, and was in an abusive relationship with her husband.  <u>Id.</u>  As such, the Court finds that the ALJ properly weighed the evidence in the record in affording Faraco's opinion only some weight.

Accordingly, it is recommended that Depronio's request to remand on the ground be denied.

### iii.  Depronio's Credibility

Depronio alleges that the ALJ improperly assessed Depronio's credibility.  Dkt. No. 9-1 at 20-24.  The Commissioner argues that the ALJ properly assessed Depronio's credibility, and that the assessment is supported by substantial evidence.  Dkt. No. 10 at 13-15.

"It is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."  <u>Carroll v. Sec'y of Health and Human Servs.</u>, 705 F.2d 638, 642 (2d Cir. 1983) (citing <u>Richardson</u>, 402 U.S. at 398) (additional citations omitted).  The ALJ's assessment regarding the claimant's subjective complaints is a two-step inquiry.  <u>Genier v. Astrue</u>, 606 F.3d 46, 49 (2d Cir. 2010).  First, the ALJ must determine "whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms

-21-

alleged." Id. (citing 20 C.F.R. § 404.1529(b)).  If the ALJ determines that the claimant does

not suffer from such a medically determinable impairment, "the ALJ must consider 'the

extent to which [the claimant's] symptoms can reasonably be accepted as consistent with

the objective medical evidence and other evidence' of record."  Id. (quoting 20 C.F.R. §

404.1529(b)).  However, an ALJ cannot reject a claimant's statements about the limiting

effect of symptoms "solely because the available objective medical evidence does not

substantiate [those] statements."  20 C.F.R. § 404.1529(c)(2).  The evidence to be

considered by the ALJ includes "information about [the claimant's] prior work record, [the

claimant's] statements about [his or her] symptoms, evidence submitted by [the claimant's]

treating or nontreating source, and observations by [Social Security Administration]

employees and other persons."  20 C.F.R. § 404.1529(c)(3).

        If a medically-determinable impairment is shown, the ALJ must evaluate the

intensity, persistence, and limiting effects of the individual's symptoms to determine the

extent to which the symptoms limit the individual's ability to do basic work activities.  DDR

96-7p, 1996 WL 374186, at *2 (July 2, 1996).  The ALJ must consider several factors

pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

> (i) [The claimant's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) the type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate. . .pain or other symptoms;
>
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;

(vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and,

(vii) Other factors concerning [the claimant's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Depronio argues that the ALJ failed to take into account evidence that Depronio did not perform activities of daily living on a sufficiently consistent basis to allow the ALJ to determine that her reported activities of daily living negatively impacted her credibility. Dkt. No. 9-1 at 23-24.

Depronio reported that, on a daily basis, she could get dressed; let the dogs out; do laundry; take her son to school; clean the house; prepare food; watch the television; and attend doctor appointments. T. 212. She prepared food at least four to five nights per week Id. at 238, 482. She cleaned every day. Id. at 482. She also reported that she takes care of her son and husband, in the form of cooking for them and cleaning the house they share. Id. at 213. Her son assists with some chores, including taking care of their pets. Id. She stated that she needs assistance with the laundry, vacuuming, dusting, making the beds and mopping. Id. at 214. She does not do housework or yard work due to her back pain. Id. at 215.

Depronio stated that she is no longer able to sit or stand for a "long time." T. 213. She had difficulty falling asleep and staying asleep. Id. However, her treatment notes indicated that medicine helped her sleep. Id. at 597. She goes outside every day, and is able to ride a bicycle and use public transportation. Id. at 215. She does not drive because she does not have a vehicle, but even if she did, she does not "care to drive" because she

"get[s] irritated with people." Id. She shops for food and clothes about twice a month for one hour each time. Id. She is able to manage her finances. Id. at 215-16.

As to personal care, Depronio reported that she sometimes needs to sit down to get dressed. T. 213. She showers every two to four days because sometimes she does not have the energy to bathe, or she "feel[s] down." Id.

As to hobbies and other interests, Depronio stated that she watches the television, plays kids' games and does puzzles, but cannot play games for very long because she cannot sit for an extended period of time. T. 216. She goes to church and bible study on a regular basis. Id. She has problems getting along with friends and family because of her depression. Id. She has trouble concentrating, and understanding people during conversations. Id. at 216-18. She also has trouble managing stress and remembering things. Id. at 219.

Dr. Jensen opined that Depronio was "able to do all activities of daily living except when she [was] not in the mood because of depression and some back problems." T. 490. Dr. Jensen ultimately found that Depronio's symptoms "appear to be consistent with psychiatric problems, but in themselves do not appear to be significant enough to interfere with [her] ability to function on a daily basis." Id.

Based on the record, the Court finds that the ALJ did not err in finding that Depronio's reported activities of daily living do not support a finding of disability. Depronio stated that she was able to care for her son, clean the house, and cook meals almost every day, as discussed above. She also attended church about twice per week. T. 216. There is nothing in the record to indicate, nor does Depronio identify, any evidence by which the Court could determine that Depronio did not perform many activities of daily living on a

consistent basis.  See Rutkowski v. Astrue, 368 F. App'x 226, 230 (2d Cir. 2010) (affirming

the ALJ's credibility finding where "the allegations of disability contradicted the broader

evidence"); Paulino v. Colvin, No. 13 Civ. 3718(AT)(AJP), 2014 WL 2120544, at *17-18

(S.D.N.Y. May 13, 2014) (noting that the plaintiff cooked, cleaned, did laundry, took public

transportation, and attended church, in finding that the plaintiff's claims of limitations due to

her depression were not entirely credible); Givens v. Colvin, No. 13 Civ. 4763(VEC)(AJP),

2014 WL 1394965, at *10 (S.D.N.Y. Apr. 11, 2014) (noting that the plaintiff was "capable of

performing many day-to-day activities" including using public transportation, and going to

church, in finding that the plaintiff was not entirely credible).

Depronio's allegation that the ALJ erred in finding that Depronio's treatment record

was inconsistent is also without merit.  The ALJ may not draw an adverse inference from

Depronio's failure to consistently pursue treatment "'without first considering any

explanations that the individual may provide, or other information in the case record, that

may explain infrequent or irregular medical visits or failure to seek medical treatment.'"

Schlichting v. Astrue, 11 F. Supp. 3d 190, 207 (N.D.N.Y. 2012) (quoting S.S.R. 96-7P,

Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims:

Assessing the Credibility of an Individual's Statements, 1996 WL 374186, at *7 (S.S.A. July

2, 1996)).  Here, the ALJ clearly considered Depronio's reasons for missing appointments,

where the ALJ stated that Depronio "frequently cancelled appointments, sometimes claiming

that she could not come because her husband had the car, or she could not catch a bus in

time, and at other times, she offered no explanation."  T. 24.  As such, the Court finds that

the ALJ did not err in categorizing Depronio's treatment as "inconsistent."

Depronio further takes issue with the ALJ's statement that "[a]lthough she claimed

that her husband was verbally abusive and she said she wanted to end the relationship, she returned to live with him after visiting her family in St. Lawrence County. . . ."  T. 22. Depronio accuses the ALJ of "diminishing her credibility because she was a victim of domestic violence."  Dkt. No. 9-1 at 22.  The Court disagrees.  An ALJ is allowed to consider "precipitating and aggravating factors," along with any other factors the ALJ deems pertinent, in assessing a claimant's credibility.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Here, the ALJ determined that Depronio's "main problems stemmed from her husband, who was addicted to crack cocaine, was not working and was verbally abusive, and because she was upset that she had to live far away from her children."  T. 22.  The ALJ's conclusion is supported by Depronio's treatment records.  On May 6, 2010, Depronio reported to Langa that she was "stressed" because she did not know her husband was addicted to crack cocaine before moving to Buffalo with him, and he was not working or paying the bills at the time.  Id. at 576.  She reported on May 25, 2010 that she was feeling better because her husband had stopped using.  Id. at 577.  On January 19, 2011, Depronio stated that she was feeling better after staying at Haven House because she and her husband were getting along better.  Id. at 585.  On October 16, 2012 during an appointment with Faraco, Faraco noted that she "was upset over her husband's behaviors" and "vented about her husband's drug use, his mood and their relationship."  Id. 680-81.  In short, Depronio's treatment records reveal that her relationship with her husband directly affected her mental health, and the ALJ did not err in considering that relationship as a factor in the assessment of Depronio's limitations.

Accordingly, it is recommended that Depronio's request to remand on this ground be denied.

### iv. Step Five Determination

Depronio argues that the ALJ's step five determination is necessarily flawed because the ALJ's assessment of Depronio's RFC was flawed. Dkt. No. 9-1 at 18. Additionally, Depronio argues that the ALJ's application of the Medical-Vocational Grid rules was inappropriate given the nonexertional limitations caused by Depronio's learning disability and verbal comprehension deficits. Id. As an initial matter, the Court finds that the ALJ's step five determination was not based on a flawed RFC assessment, as the Court has determined that the ALJ did not err in assessing Depronio's RFC.

The ALJ found that the additional nonexertional limitations caused by Depronio's learning disability were that she was "limited to performing simple work tasks that do not involve frequent communication with the general public." T. 21. However, the ALJ found that the additional limitations "have little or no effect on the occupational base of unskilled light work." Id. at 27. Considering Depronio's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Depronio can perform, and referred to Medical-Vocational Rule 202.20. Id. Because Depronio is a younger individual with a high school education and a previous work history of unskilled work, the Medical-Vocational Guidelines directed a finding of "not disabled." 20 C.F.R. Subpart P, Appendix 2, § 202.20.

The Court finds that Depronio's argument that the ALJ was required to consult a vocational expert is unavailing. "Vocational expert testimony is required only if a claimant's 'nonexertional limitations . . . significantly limit the range of work permitted by his exertional limitations.'" Lewis v. Colvin, 548 F. App'x 675, 678 (2d Cir. 2013) (quoting Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010)). Accordingly, the ALJ's nonexertional limitations did not

require the consultation of a vocational expert.  See id. (finding that the additional nonexertional limitations of "only being able to understand, remember and carry out simple instructions" had little or no effect on the occupational base of unskilled light work); House v. Comm'r of Soc. Sec., 32 F. Supp. 3d 138, 156 (finding that the claimant could perform the basic mental demands of unskilled work).

Accordingly, its is recommended that Depronio's request to remand on this issue be denied.

## III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that Depronio's motion for a finding of disability (Dkt. No. 9) be **DENIED** and the Commissioner's decision finding no disability be **AFFIRMED**.

It is **ORDERED** that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Pursuant to 28 U.S.C. §636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); 28 U.S.C §636(b)(1); FED R. CIV. P. 72, 6(a), 6(e).

Dated:      March 28, 2016
            Albany, New York

Christian F. Hummel
Christian F. Hummel
U.S. Magistrate Judge